IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR L. FRANK, M.D., Ph.D., <br><br>     *Movant*, <br><br>   v. <br><br> HONEYWELL INTERNATIONAL INC. *f/k/a* ALLIED SIGNAL, INC., *successor to* BENDIX CORP., <br><br>     *Respondent*, <br><br>   and <br><br> FORD MOTOR COMPANY, *et al*., <br><br>     *Interested Parties*. | CIVIL ACTION <br> NO. 15-mc-00172 |

MEMORANDUM

**PAPPERT, J.**                            **August 12, 2015**

  Before the Court is a "Motion for Protective Order and/or to Quash the Subpoena" ("Motion") filed by non-party Dr. Arthur L. Frank ("Dr. Frank"). Honeywell International Inc. ("Honeywell"), as the subpoenaing party, and Ford Motor Company ("Ford"), as an interested party, oppose the Motion. After hearing oral argument, the Court grants the Motion and quashes the subpoena for the reasons that follow.

**I.**

  Honeywell and Ford are currently defendants in an asbestos litigation case in the Eastern District of North Carolina. *See Yates v. Ford Motor Co*., *et al*., No. 5:12-cv-752-FL (E.D.N.C.). On June 17, 2015, Honeywell served Dr. Frank with a third-party subpoena, purportedly requiring him to produce documents and appear for a deposition (the "*Yates* Subpoena"). (Mot.

Quash 2, Ex. A, ECF No. 1.)  Dr. Frank is a professor of public health at Drexel University in Philadelphia, Pennsylvania (*id*. at 3, Frank Decl. ¶ 1), and his deposition was to take place in Philadelphia.  (*Id*. at 1-2, Ex. A.)  Dr. Frank responded to the *Yates* Subpoena by filing the Motion presently before the Court.[1]

Dr. Frank, by his own admission, is a prolific plaintiffs' expert in asbestos cases.  (Mot. Quash 3-4; Hr'g Tr. 23:2-8 July 29, 2015.)  He is a "frequent lecturer widely recognized and widely published in the fields of preventative medicine, public health, and occupational and environmental medicine."  (Mot. Quash 3, Frank Decl. ¶ 1.)  His expert consultations on asbestos cases concern medical issues surrounding asbestos-related diseases, including mesothelioma.  (*Id*. at 3-4.)  On average, Dr. Frank gives four to six depositions every month as a plaintiffs' expert in asbestos cases.  (Hr'g Tr. at 64:12-16.)

Dr. Frank has not been retained as an expert in the *Yates* case.  (Mot. Quash 4; Opp'n to Mot. Quash 7, ECF No. 2; Hr'g Tr. at 36:22-23.)  Honeywell wishes to question Dr. Frank concerning a series of events that transpired in 2009, when Dr. Frank successfully lobbied the National Cancer Institute ("NCI") to change language on its website and in its "Fact Sheets" regarding the cancer risks experienced by automobile mechanics exposed to asbestos through brake repair.  (Mot. Quash 6-7, Frank Decl., Ex. 2.)  Resolution of the present discovery dispute requires a brief examination of these 2009 events.

---

[1]  Venue is proper in this Court to hear Dr. Frank's Motion because his deposition was scheduled to take place in Philadelphia, which lies within the Eastern District of Pennsylvania.  *See* Fed. R. Civ. P. 45(d)(3) (giving circumstances where "the court for the district where compliance is required" may quash or modify a third-party subpoena); *see also* Fed R. Civ. P. 45(c) (providing that the "place of compliance" for a deposition is the judicial district where the deposition is to be held); Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.").

  **A.**  <u>**2009 Events**</u>

  In April 2009, Dr. Frank "became aware" that the NCI was going to revise its website to state that:

> [W]hether there is an increased risk of mesothelioma or lung cancer associated with asbestos exposure from brake repair is controversial, but the evidence to date does not support an increased risk.

(Mot. Quash 6, Frank Decl., Ex. 2.) Dr. Frank felt that this statement was "misleading, erroneous, and contrary to the public health." (*Id*. at 6.) Dr. Frank also took issue with some of the citations accompanying this statement, which he believed were "unreliable" and "very poor literature." (*Id*., Frank Decl., Ex. 2.) Dr. Frank contacted the NCI with his concerns and, after a phone call and series of letters, persuaded the NCI to change the above statement to:

> Studies into the cancer risk experienced by automobile mechanics exposed to asbestos through brake repair are limited, but the overall evidence suggests that there is no safe level for asbestos exposure.

(*Id*.) The NCI also eliminated citations to two research papers that Dr. Frank found unreliable. (*Id*.) Thus, due to Dr. Frank's efforts, these changes appeared on the 2009 NCI Fact Sheet and on the NCI's website. (*Id*.)

  The changes initiated by Dr. Frank to the 2009 NCI Fact Sheet and website became a contested issue during Dr. Frank's subsequent depositions in cases where he was serving as an expert witness. On July 16, 2009, Dr. Frank was deposed in the unrelated case of *In re: Asbestos Liability Litigation*, No. 092009J&C-TG (Del. Super. Ct.). (*Id*., Frank Decl. ¶ 9, Ex. 3.) On July 21, 2009, Dr. Frank was deposed in a second unrelated asbestos case, *Herring v. A.W. Chesterson, Inc*., *et al*., No. 08-L-1000 (Ill. Cir. Ct.). (Opp'n to Mot. Quash, Ex. N.) The transcripts from these depositions reflect Dr. Frank being questioned at length regarding his

efforts to change the NCI Fact Sheet and website in April 2009.  (*See* Mot. Quash, Frank Decl., Ex. 3; Opp'n to Mot. Quash, Ex. N.)

During these depositions, Dr. Frank revealed that he first became aware that the NCI was revising its website when he was contacted by Christian Hartley ("Hartley"), an asbestos plaintiffs' attorney with whom Dr. Frank had worked in the past.  (Mot. Quash, Frank Decl. ¶ 7, Ex. 3 at 90:4-17, 94:2-10; Opp'n to Mot. Quash, Ex. N at 50:8-17; Hr'g Tr. at 13:2-7.)  Dr. Frank testified that Hartley informed him of the upcoming revision and asked him to "look at it and see if it caused [him] any concern."  (Mot. Quash, Frank Decl. ¶ 7, Ex. 3 at 91:3-16; Opp'n to Mot. Quash, Ex. N at 50:8-17.)  When Dr. Frank decided that the proposed revision did worry him, Hartley gave Dr. Frank the name of the NCI employee in charge of the website so that Dr. Frank could voice his objections to NCI.  (Mot. Quash, Frank Decl., Ex. 3 at 90:20-21; Opp'n to Mot. Quash, Ex. N at 50:18-53:1.)

Dr. Frank called the NCI employee in charge, Dr. Richard E. Manrow, but was unsatisfied with their conversation because "[Manrow] took a rather bureaucratic point of view" and was "unwilling to consider any changes."  (Opp'n to Mot. Quash, Ex. N at 56:11-57:18.)  Instead, following Dr. Manrow's suggestion, Dr. Frank wrote a letter to the director of NCI, Dr. John E. Niederhuber, on April 24, 2009 outlining his concerns.  (*Id*.)  Before submitting the letter, Dr. Frank sent a copy to Hartley.  (*Id*., Ex. N at 59:13-16.)  Dr. Frank and Hartley had conversations and exchanged emails about "points that might go into [the] letter" and Hartley "had some suggestions about wording."[2]  (*Id*., Ex. N at 58:12-59:12.)  On May 5, 2009, Dr. Niederhuber responded to Dr. Frank via letter, thanking him for his concern and indicating that

---

[2]  Dr. Frank never testified further about the details of his conversations and emails with Hartley and at one point in the July 21, 2009 deposition begins to claim that those communications are privileged.  (Opp'n to Mot. Quash, Ex. N at 58:20-60:1.)

4

NCI would make the changes.  (Mot. Quash, Frank Decl., Ex. 2.)  On May 12, 2009, Dr. Frank wrote back applauding NCI's actions.  (*Id*.)  The letters exchanged between Dr. Frank and Dr. Niederhuber were marked as exhibits in Dr. Frank's July 16, 2009 and July 21, 2009 depositions (*see* Mot. Quash 6, Frank Decl., Ex. 3 at 96:12-98:13; Opp'n to Mot. Quash, Ex. N at 57:19-58:8), and are attached to Dr. Frank's Motion to Quash.  (*See* Mot. Quash, Frank Decl., Ex. 2.)

After this deposition testimony, on July 30, 2009, Dr. Frank was served with a subpoena ("2009 Subpoena") in yet another unrelated asbestos case, *In re: Asbestos Products Liability Litigation*, MDL No. 875 (E.D. Pa.)—a multidistrict litigation ("MDL") in this Court in which Dr. Frank had been designated as an expert witness.  (*See* Mot. Quash 5, Frank Decl., Ex. 5.)  The 2009 Subpoena contained twenty-four document requests relating to Dr. Frank's communications with NCI and Hartley, as well as other plaintiffs' attorneys,[3] regarding the changes.  Dr. Frank objected to the requests in the 2009 Subpoena on the grounds of attorney-client privilege and responded with a privilege log.  (Opp'n to Mot. Quash, Ex. G at Ex. 1 ¶ 12.)  While the parties disputed whether or not the requested documents were in fact privileged, no documents were ever produced because the cases involved were either settled or dismissed.[4]  (*Id*. at 4-5.)

---

[3]  The 2009 Subpoena also requests communications Dr. Frank had with Gary DeMuzio and Aaron DeLuca, two plaintiffs' attorneys whom Dr. Frank testified he "heard from" after the NCI agreed to the changes.  (*See* Mot. Quash, Frank Decl., Ex. 3 at 101:7-18; Opp'n to Mot. Quash, Ex. N at 60:18-61:24.)

[4]  Dr. Frank actually filed a motion to quash the 2009 Subpoena, and later filed the privilege log during the course of the motion briefing.  (*See* Opp'n to Mot. Quash, Ex. D & Ex. G at Ex. 1 ¶ 12.)  The MDL judge denied Dr. Frank's motion without prejudice and instructed Dr. Frank to re-file his motion on the individual dockets for the applicable individual cases "for the purposes of keeping individual dockets complete and organized."  (*Id*. at Ex. M.)  Dr. Frank never re-filed his motion, however, due to the individual cases being settled or dismissed.  (*Id*. at 4-5; *see also* Hr'g Tr. at 61:3-62:8 July 29, 2015.)  Thus, the MDL judge never ruled on Dr. Frank's motion on the merits and the requested documents were never produced.  (Opp'n to Mot. Quash 4-5, Ex. M.)

### B.     Present Dispute over the *Yates* Subpoena

In addition to a deposition request, the *Yates* Subpoena contains five document requests asking for all documents related to the changes Dr. Frank spearheaded in 2009.[5] (Mot. Quash, Ex. A.) Notably, however, the breadth of the *Yates* Subpoena is larger than it appears because Request Number One incorporates all documents responsive to the 2009 Subpoena, and Request Number Two asks for all documents responsive to the 2009 Subpoena from 2009 up to the present. (*Id*.) Dr. Frank moves to quash the *Yates* Subpoena on three grounds, arguing: (1) the *Yates* Subpoena is overly broad, unduly burdensome, and seeks to harass Dr. Frank; (2) the *Yates* Subpoena seeks communications that are protected by the attorney-client privilege; and (3) the *Yates* Subpoena seeks to elicit the opinion of an "unretained expert" in violation of Federal Rule of Civil Procedure 45(d)(3)(B)(ii). (Mot. Quash 3.)

Honeywell, joined by Ford, opposes Dr. Frank's Motion to Quash. (ECF Nos. 2, 7.) First, Honeywell argues that the *Yates* Subpoena is not unduly burdensome because it requests the same universe of documents as the 2009 Subpoena, Dr. Frank has been aware of these requests for over six years, and he has already begun gathering materials responsive to these requests. (Opp'n Mot. Quash 6.) Second, Honeywell asserts that the attorney-client privilege does not apply to Dr. Frank's discussions with Hartley about the 2009 NCI changes because Dr. Frank never sought nor retained Hartley as his personal attorney. (*Id*.) Third, Honeywell maintains that the *Yates* Subpoena does not request the opinion of an "unretained expert" because Honeywell is only "seeking to discover the extent of Dr. Frank's *ex parte* lobbying efforts to effect that change in language, rather than any opinion he may or may not have on brake dust or a mechanic's exposure to it." (*Id*. at 7.) The Court held oral argument on the

---

[5]     The *Yates* Subpoena originally contained twelve document requests. (*See* Mot. Quash, Ex. A.) In response to the Motion to Quash, however, Honeywell withdrew requests six through twelve to make its current document requests consistent with the scope of the 2009 Subpoena. (*See* Opp'n Mot. Quash 2 n.1.)

Motion on July 29, 2015. (ECF No. 9.) Because the Court finds that the *Yates* Subpoena is unduly burdensome on Dr. Frank, it does not reach Dr. Frank's second or third arguments.

## II.

Federal Rule of Civil Procedure 26 sets forth the general scope of discovery in civil suits: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Courts have significant discretion when resolving discovery disputes. *Taggart v. Wells Fargo Home Mortg., Inc.,* No. 10-cv-00843, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012) (citing *Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 778 (3d Cir. 2000)).

Generally, discovery requests may be curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In addition, Rule 45 provides corresponding protections for non-parties subject to subpoena. "A non-party may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45." *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012) (citation omitted). After being served with a subpoena, a non-party may seek to have it quashed by filing a motion with the court where compliance is required. *See* Fed. R. Civ. P. 45(d). Rule 45(d)(3)(A) describes when a court *must* quash or modify a subpoena, such as when a request "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

"'The serve-and-volley of the federal discovery rules govern the resolution of' a motion to quash." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (citing

7

*Mycogen Plant Sci., Inc. v. Monsanto Co.,* 164 F.R.D. 623, 625 (E.D. Pa. 1996)).  The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Rule 26(b)(1).  *Id.* (citing *Mycogen*, 164 F.R.D. at 625-26).  Next, the subpoenaed nonparty must show that disclosure of the information is protected under Rule 45(d)(3).  *Id.* (citing *Mycogen*, 164 F.R.D. at 626).  If the subpoenaed non-party claims that disclosure would subject it to an undue burden under Rule 45(d)(3)(A), the Court considers several factors to determine whether the burden on the subpoenaed non-party is in fact undue, including:  (1) relevance of the requested materials, (2) the party's need for the documents, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the recipient's status as a non-party.  *See Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 13-mc-238, 2014 WL 272088, at *4 (E.D. Pa. Jan. 24, 2014).

"[E]ven if the information sought is relevant, discovery is not allowed where no need is shown."  *Garden City*, 2014 WL 272088, at *4 (citing *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013)).  Furthermore, a "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party."  *In re Domestic Drywall*, 300 F.R.D. at 239 (quotation omitted); *accord Frank Brunckhorst Co. v. Ihm*, No. 12-mc-0217, 2012 WL 5250399, at *5 (E.D. Pa. Oct. 23, 2012) ("In the case of nonparty deponents, courts recognize that '[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents.'"); *Grider v. Keystone Health Plan Cent., Inc.*, No. 05-mc-40, 2005 WL 2030456, at *7 (M.D. Pa. July 28, 2005) ("[I]n cases where a non-party is the

subject of discovery requests, courts may impose broader restrictions, particularly where a non-party is requested to produce documents of another non-party.").

Here, Honeywell has met its burden of showing that Dr. Frank's documents and deposition are relevant to the *Yates* case.  At oral argument, Honeywell's counsel explained that during recent *Daubert* hearings, the *Yates* plaintiffs used the 2009 NCI Fact Sheet to "aggressively" cross-examine Honeywell's expert witness, Dr. David Garabrant.  (Hr'g Tr. at 37:9-38:24, 67:3-5.)  Honeywell wants to use Dr. Frank's testimony and documents to rehabilitate Dr. Garabrant and demonstrate that the changes to the NCI Fact Sheet were in large part manufactured by Dr. Frank in coordination with the asbestos plaintiffs' bar.  (*Id*. at 67:6-9; *see also* Opp'n Mot. Quash 7.)  Since expert opinions can play a crucial role in asbestos litigation, especially with regard to the issues of causation and damages, the Court concludes that the discovery sought from Dr. Frank is relevant to Honeywell's defense in the *Yates* case.

However, in proceeding to the next step of the analysis, the Court is not persuaded that Honeywell *needs* the discovery it seeks.  Honeywell already has ample evidence in its possession—Dr. Frank's sworn deposition testimony on no less than two occasions and the letters between Dr. Frank and NCI—that clearly demonstrates that Dr. Frank instigated the changes to the 2009 NCI Fact Sheet and that he was triggered to do so by Hartley.  (*See* Mot. Quash, Frank Decl., Exs. 2-3 (complete letter correspondence between Dr. Frank and NCI and Dr. Frank's July 16, 2009 deposition transcript); Opp'n to Mot. Quash, Ex. N (Dr. Frank's July 21, 2009 deposition transcript)*; see also* Hr'g Tr. at 48:21-49:2 (counsel for Honeywell admitting that Dr. Frank's prior deposition testimony would be admissible in *Yates*); *id*. at 67:3-13 (counsel for Ford agreeing that the letters between Dr. Frank and NCI could be shown to the *Yates* jury as evidence).)  The Court appreciates Honeywell's argument that the letters may

appear "vanilla" to a jury (Hr'g Tr. at 67:12), and that the production of Dr. Frank's documents would lead to "a more complete deposition of Dr. Frank." (*Id*. at 51:19.)  Nevertheless, the fact remains that all evidence necessary to rehabilitate Dr. Garabrant and rebut the 2009 NCI Fact Sheet is already in Honeywell's hands.  Given that "[w]here proof of either relevance *or* need is not established, discovery is properly denied," *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (citing *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987)) (emphasis in original), the Court's undue burden analysis ends here.

      The Court accordingly holds that the *Yates* Subpoena should be quashed because Honeywell and Ford have not shown a need for the documents or deposition testimony they seek from Dr. Frank.  This desired discovery can, should, and likely will be obtained under more appropriate circumstances and in the appropriate forum—*i.e*., the next asbestos case where Dr. Frank is designated as an expert and the 2009 NCI Fact Sheet is relevant.  Dr. Frank's Motion for Protective Order and/or to Quash the Subpoena is granted.

      An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.